1  Paul M. Smith, SBN 306644
   paul.smith@ogletree.com
2  OGLETREE, DEAKINS, NASH, SMOAK &
   STEWART, P.C.
3  400 Capitol Mall, Suite 2800
   Sacramento, CA 95814
4  Telephone:    916-840-3150
   Facsimile:    916-840-3159
5
   Attorneys for Defendant
6  VERTIV CORPORATION

7

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10

11 | LAWRENCE TOROK, on behalf of himself and     | Case No. _____
   | all others similarly situated, and the general |
12 | public,                                        | **DEFENDANT VERTIV CORPORATION'S**
   |                                                | **NOTICE OF REMOVAL OF CIVIL**
13 |            Plaintiff,                          | **ACTION TO UNITED STATES DISTRICT**
   |                                                | **COURT**
14 |      vs.                                       |
   |                                                | [Filed concurrently with Civil Cover Sheet;
15 | VERTIV CORPORATION, an Ohio                    | Certification of Conflicts and Interested Entities
   | corporation, and DOES 1 through 50, inclusive, | or Persons; Corporate Disclosure Statement;
16 |                                                | Declarations of Paul Smith, Matt Wolfe and
   |            Defendant.                           | Barb Hapner in Support of Removal]
17 |                                                |
   |                                                | [Alameda County Superior Court
18 |                                                |  Case No. 24CV063621]
19 |                                                | Action Filed:    2/13/2024
   |                                                | Trial Date:      TBD
20

21 **TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF**

22 **CALIFORNIA AND TO PLAINTIFF LAWRENCE TOROK AND HIS ATTORNEYS OF**

23 **RECORD:**

24        PLEASE TAKE NOTICE THAT Defendant VERTIV CORPORATION("Defendant"), by

25 and through the undersigned counsel, hereby removes the above-entitled action from the Superior

26 Court of the State of California for the County of Alameda to the United States District Court for the

27 Northern District of California pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446. Defendant removes

28 this action on the grounds that: (a) there is complete diversity of citizenship between Plaintiff

                                            1

LAWRENCE TOROK ("Plaintiff"), a citizen of the State of California, and Defendant, a citizen of the state of Ohio; (b) the amount placed in controversy by the complaint exceeds the jurisdictional minimum of $75,000; and (c) the foregoing facts were true when Plaintiff filed this action in superior court and remain true as of the date on which Defendant files this Notice of Removal.

## I.    THE STATE COURT ACTION

1.    On February 13, 2024, Plaintiff filed a Class Action Complaint in Alameda County Superior Court entitled, *Lawrence Torok v. Vertiv Corporation, et al.*, Case No. 24CV063621 (the "State Court Action"). The Complaint in the State Court Action sets forth six causes of action: (1) Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512 and 1198); (2) Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7 and 1198); (3) Failure to Pay Hourly Wages and Overtime (Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1197.1 and 1198); (4) Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202, and 203); (5) Failure to Indemnify (Lab. Code § 2802); and (6) Unfair Competition (Bus. & Prof. Code §§ 17200 et seq.). A true and correct copy of the Complaint in the State Court Action is attached hereto as **Exhibit A**.

2.    Plaintiff "brings this class action to recover unpaid wages, liquidated damages, penalties, restitution, and related relief on <u>behalf of himself</u>, all others similarly situated, and the general public." (emphasis added) [Exhibit A P. 1 ¶ 1].[1]

3.    On February 14, 2024, Plaintiff served on Defendant a copy of the Summons, Complaint, Civil Case Cover Sheet, and Notice of Case Management Conference through its registered agent for service of process – CT Corporation System. A true and correct copy of this service packet, including the Summons, Civil Case Cover Sheet, and the Notice of Case Management Conference (and excluding the Complaint which is already attached as Exhibit A) is attached hereto as **Exhibit B**.

## II.    REMOVAL IS TIMELY

4.    A defendant has up to thirty days to remove a civil action to federal court after service of a summons and complaint in the state court action. 28 U.S.C. § 1446(b) ("[A] notice of removal

---

[1] All references to page numbers in the Complaint refer to the page numbers used by Plaintiff in the filing.

may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, or other paper from which it may first be ascertained that the case is one which is or has become removable."); *See also, Murphy Bros v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (confirming that the time to remove is triggered by formal service of the summons and complaint).

5. Here, removal is timely because Defendant removed this action from the Superior Court to the United States District Court within thirty days of service of the summons and complaint.

### III.   COMPLETE DIVERSITY EXISTS BETWEEN THE PARTIES

6. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendant are "citizens of different States" (28 U.S.C. § 1332(a)(1)) and the amount in controversy of <u>Plaintiff's individual claims</u> "exceeds the sum or value of $75,000, exclusive of interest and costs…" (28 U.S.C. § 1332(a)).[2] Removal based on Plaintiff's individual claims is appropriate, even though the Complaint is filed as a class action, so long as the amount in controversy of Plaintiff's individual claims "exceeds the sum or value of $75,000…" *See, Patel v. Nike Retail Services, Inc.*, 58 F. Supp. 3d 1032 (recognizing that removal based on Patel's individual claims appropriate in wage-and-hour class action complaint).

7. **<u>Plaintiff Lawrence Torok is a Citizen of California.</u>** An individual is a 'citizen' of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's 'domicile' is the place he or she resides with the intention to remain or which he or she intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

8. As set forth in the complaint, Plaintiff "<u>is</u>, and at all relevant times mentioned herein [was], an individual residing in the State of California." (emphasis added) [Exhibit A, P. 2 ¶ 5] This is enough to establish citizenship. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) (confirming that "the existence of domicile for purposes of diversity is determined as of the time the lawsuit is filed" (citing *Hill v. Rolleri*, 615 F.2d 886, 889 (9th Cir. 1990)). As such, Plaintiff is domiciled in, and thus for purposes of diversity jurisdiction is a citizen of, the State of California.

---

[2] Defendant notes that this removal is *not* based on the Class Action Fairness Act ("CAFA").

9. **Defendant Vertiv Corporation is a Citizen of Ohio.** Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

10. In *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), the United States Supreme Court explained that a corporation's " 'principal place of business' [as contained in Section 1332(c)] is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 91-93. That is, the principal place of business is where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

11. Defendant is a corporation organized and incorporated under the laws of the State of Ohio. [Declaration of Matthew Wolfe ("Wolfe Decl.") ¶ 2].

12. Defendant maintains its principal place of business in the State of Ohio. [*Id.* at ¶ 2.] Defendant conducts its executive and administrative functions from its corporate headquarters in the State of Ohio. *Id.* Defendant's executive officers, including the Chief Executive and Chief Financial Officer, among others, maintain offices at Defendant's offices in the State of Ohio. And Defendant makes and implements company-wide operating, financial employee relations, and policy decisions from its headquarters in Ohio. *Id.* To use the Supreme Court's language, Defendant's "officers direct, control, and coordinate the corporation's activities," from Ohio. *Hertz Corp. v. Friend, supra,* 559 U.S. at 93 (2010). Therefore, Defendant is a citizen of the State of Ohio.

13. **The Citizenship of Doe Defendants is Irrelevant**. "For purposes of removal . . . the citizenship of defendants sued under fictitious names shall be disregarded. 28 U.S.C. § 1441(a). Inclusion of "Doe" defendants in a state court complaint has no effect on removability. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) (in determining whether diversity of citizenship exists, only the named defendants are considered); *Salveson v. W. States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984) (holding that the rule in the 9th Circuit is that non-served defendants are not required to join in a removal petition). Therefore, Plaintiff's inclusion of "Does 1 to 50" has no impact on diversity.

IV.    **THE AMOUNT IN CONTROVERSY EXCEEDS $75,000**

14.    This Court has original jurisdiction to hear this dispute pursuant to 28 U.S.C. §§ 1332(a) and 1441(a) on the grounds that the amount in controversy exceeds the $75,000 jurisdictional threshold set by statute, exclusive of interest and costs.[3]

15.    To establish jurisdiction, Defendant must show only that it is "more likely than not" that the amount in controversy exceeds the jurisdictional thresholds set by statute for diversity jurisdiction. *Sanchez v. Monumental Life Ins. Co.*, 95 F.3d 856, 863 (9th Cir. 1996). Legal certainty of the amount in controversy is not required. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) ("[a] defendant seeking removal … must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum.")

16.    To meet this relatively low burden establishing the amount in controversy, a defendant <u>may</u> rely on plaintiff's allegations in the complaint, which are assumed to be true. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992). The removing defendant may also introduce external evidence and assumptions: "[T]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115(9th Cir. 2004); *see also, Rippee v. Bos. Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (accepting the use of "Defendant's own numbers" for "purposes of analyzing the amount in controversy.")

17.    To make this determination, the Court must consider all recoverable damages, exclusive of interests and costs, including compensatory damages, emotional distress damages, punitive damages, statutory penalties, and crucially in employment cases, attorneys' fees. *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347-348 (1977); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-1156 (9th Cir. 1998).

///

///

///

---

[3] Defendant discusses the allegations in Plaintiff's Complaint solely for purposes of demonstrating that the amount in controversy, as pled, exceeds $75,000. By doing so, Defendant does not concede that Plaintiff is entitled to damages in excess of the jurisdictional minimum, or to any damages at all.

A.    <u>Plaintiff's Individual Labor Code Claims Place More Than $75,000 in Controversy</u>[4]

18.    As noted in Paragraph 1 of Section I above, Plaintiff asserts six causes of action for alleged violations of the California Labor Code and California's Business & Professions Code. According to the Complaint, Defendant (1) failed to provide meal periods; (2) failed to provide rest periods; (3) failed to pay hourly wages and overtime; (4) failed to pay all final wages; (5) failed to indemnify; and (6) engaged in unfair competition. [Exhibit A].

19.    According to Defendant's records, Plaintiff worked for Defendant from October 22, 2018 until he was involuntarily terminated on August 5, 2023. [Declaration of Barb Hapner ("Hapner Decl.") ¶ 3]. According to Plaintiff's time and pay records, Plaintiff regularly worked at least five days per week. [*Id*. at ¶ 4.]

20.    In the Complaint, Plaintiff proposes a four year statute of limitations on all claims under the Labor Code: "The relevant time period is defined as the time period beginning four years prior to the filing of this action until judgment is rendered." [Exhibit A, P. 3 ¶ 11].

21.    Based on Plaintiff's proposed four year statute of limitations, the "relevant time period" with respect to Plaintiff's individual claims under the Labor Code is February 13, 2020 to his termination on August 5, 2023.

1.    <u>Plaintiff's Wages and Assumptions for Days Worked During the Relevant Time Period for Calculating the Amount in Controversy.</u>

22.    For purposes of calculating the amount in controversy, Defendant assumes that Plaintiff took two weeks of vacation per year in 2020, 2021, and 2022 and that Plaintiff did not work in 2023 prior to his termination.[5]

23.    Beginning with the February 13, 2020 start date, there are 46 remaining weeks in the calendar year. Assuming that Plaintiff took 2 weeks of vacation means that Plaintiff worked 44 weeks

---

[4] By estimating the amount Plaintiff might recover if he prevails, Defendant does not concede that Plaintiff will prevail on any of his claims or that, if he prevails, that he is entitled to damages in any amount or at all. Defendant expressly reserves the right to dispute Plaintiff's claims with respect to both liability and damages.

[5] Defendant assumes that Plaintiff did not work in 2023 because Plaintiff was on an unpaid leave of absence at the time of his separation in 2023. Defendant reserves the right to present additional evidence upon request or in response to a motion to remand demonstrating how much Plaintiff in fact worked in 2023, if at all, for purposes of establishing the amount in controversy for removal.

in 2020. Assuming that Plaintiff worked 5 days per week means that Plaintiff worked 220 working days in 2020.

24.    Beginning with January 1, 2021, there are 52 weeks in the calendar year. Assuming that Plaintiff took 2 weeks of vacation means that Plaintiff worked 50 weeks in 2021. Assuming that Plaintiff worked 5 days per week means that Plaintiff worked 250 working days in 2021.

25.    Beginning with January 1, 2022, there are 52 weeks in the calendar year. Assuming that Plaintiff took 2 weeks of vacation means that Plaintiff worked 50 weeks in 2022. Assuming that Plaintiff worked 5 days per week means that Plaintiff worked 250 working days in 2022.

26.    According to Defendant's records, Plaintiff also earned different pay rates between 2020 and 2022. Plaintiff earned a base hourly rate of pay equal to $45.00 per hour in 2020, $46.50 per hour in 2021, and $50.54 per hour in 2022. [Hapner Decl. ¶¶ 5-8.].

27.    The following table neatly summarizes Defendant's assumptions:

| Year | Workweeks | Workdays | Rate of Pay |
|------|-----------|----------|-------------|
| 2020 | 44 | 220 | $45.00/hour |
| 2021 | 50 | 250 | $46.50/hour |
| 2022 | 50 | 250 | $50.54/hour |

        2.    <u>Plaintiff's Meal Period Claim Places at Least $34,000 in Controversy</u>

28.    According to the Complaint, "Plaintiff…[was] required to perform work related activities during meal periods including having to keep and monitor a cellular phone during … unpaid meal periods." [Exhibit A, Pp. 5-6 ¶ 21]. Moreover, "Defendants had a common policy and practice of systemically denying Plaintiff… the opportunity to take meal periods… Plaintiff…[was] denied the opportunity to take timely meal periods prior to the completion of [the] fifth hour of work" and was "not relieved of all work duties during unpaid meal periods and [was] commonly interrupted and required to keep working during meal breaks, including having to keep and monitor cellular phones during meal breaks. Additionally, Plaintiff … [was] prohibited from leaving the work premises during meal periods, when such meal periods were taken." [Exhibit A, P. 6 ¶ 24]. Finally,

Plaintiff was denied meal periods because of "Defendant's policy of not scheduling each meal period." [Exhibit A, P. 6 ¶ 25]

29.    Based on these allegations, it is reasonable to assume for purposes of calculating the amount in controversy that Plaintiff was *never* provided with a lawful meal period. As noted above, Defendant allegedly required Plaintiff to "keep and monitor cellular phones during meal breaks" and "prohibited [Plaintiff] from leaving the work premises during meal periods, when such meal periods were taken." Under California law, "An employer's duty with respect to meal breaks under [Labor Code] section 512, subdivision (a) and [the applicable Wage Order] is an obligation to provide a meal period to employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities, and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040 (2012).

30.    In this case, Plaintiff alleges that Defendant *never* relinquished control of how Plaintiff could spend his meal break. Plaintiff claims that Defendant required Plaintiff to "keep and monitor cellular phones during meal periods" and prohibited Plaintiff from "leaving the premises." [Exhibit A P. 6 ¶ 25-26] As such, it is reasonable to presume a 100% violation rate because, based on Plaintiff's express allegations of employer control, Defendant never provided Plaintiff with a duty-free meal period.

31.    Using the assumptions summarized above concerning Plaintiff's workdays and rates of pay, Plaintiff's meal period claim places in controversy at least $34,000 in potential unpaid meal period premiums:

| MEAL PERIOD PREMIUMS | | | |
|---|---|---|---|
| Year | Workdays | Rate of Pay | Amount in Controversy Assuming 1x missed meal period/workday |
| 2020 | 220 | $45.00/hour | 220 * $45 = **$9,900** |
| 2021 | 250 | $46.50/hour | 250 * $46.50 = **$11,625** |
| 2022 | 250 | $50.54/hour | 250 * $50.54 = **$12,635** |
| **Total = $34,160** | | | |

///

8

1

### 3.  Plaintiff's Rest Period Claim Places at Least $34,000 in Controversy

2

32.  According to the Complaint, Plaintiff was required to "continue working through…

3 rest breaks, including having to keep and monitor cellular phones during rest breaks." [Exhibit A,

4 Pp. 6-7 ¶ 26]. Moreover, "Defendants had a common policy and practice of systemically denying

5 Plaintiff… the opportunity to take rest periods in compliance with California law…" *Id.*

6

33.  Based on these allegations, it is reasonable to assume for purposes of calculating the

7 amount in controversy that Plaintiff was *never* provided with a lawful rest period. As noted above,

8 Defendant allegedly required Plaintiff to "keep and monitor cellular phones during rest breaks."

9 Under California law, employers must "permit – and authorize[] employees to take – off-duty rest

10 periods. That is, during rest periods employers must relieve employees of all duties and relinquish

11 control over how employees spend their time." *Augustus v. ABM Security Services, Inc.*, 2 Cal.5th

12 257, 269 (2016) (referring to *Brinker, supra,* 53 Cal. 4th at 1038-1039). Requiring employees to

13 "keep and monitor cellular phones during rest breaks" fails to relinquish such control: "Employees

14 forced to remain on call during a 10-minute rest period must fulfill certain duties: carrying a device

15 or otherwise making arrangements so the employer can reach the employee during a break,

16 responding when the employer seeks contact with the employee, and performing other work if the

17 employer so requests. These obligations are irreconcilable with employees' retention of freedom to

18 use rest periods for their own purposes." *Augustus,* 2 Cal. 5th at 270. Accordingly, requiring

19 employees to remain 'on call' is equivalent to never relieving an employee for a rest break.

20

34.  In this case, Plaintiff alleges that Defendant *never* relinquished control of how

21 Plaintiff could spend his rest break. Plaintiff claims that Defendant required Plaintiff to "keep and

22 monitor cellular phones during rest breaks." [Exhibit A P. 6 ¶ 26] As such, it is reasonable to presume

23 a 100% violation rate because, based on Plaintiff's express allegations of employer control,

24 Defendant never provided Plaintiff with a duty-free rest break.

25 ///

26 ///

27 ///

28 ///

35.     Using the assumptions summarized above concerning Plaintiff's workdays and rates of pay, Plaintiff's rest period claim places in controversy at least $34,000 in potential unpaid rest period premiums:

| REST PERIOD PREMIUMS | | | |
|---|---|---|---|
| Year | Workdays | Rate of Pay | Amount in Controversy Assuming 1x missed rest period/workday |
| 2020 | 220 | $45.00/hour | 220 * $45 = **$9,900** |
| 2021 | 250 | $46.50/hour | 250 * $46.50 = **$11,625** |
| 2022 | 250 | $50.54/hour | 250 * $50.54 = **$12,635** |
| **Total = $34,160** | | | |

4.     Plaintiff's Minimum Wage Claim Places at Least $10,000 in Controversy

36.     Concerning work for which he was not paid, Plaintiff alleges that he was required to work through meal periods, at least in part because Plaintiff was required to "keep and monitor cellular phones" during the meal period. [Exhibit A Pp. 5-6 ¶ 21]. Accepting Plaintiff's allegations means that Plaintiff was not paid for 30 minutes of off-the-clock work at an amount equal to at least minimum wage on every day worked between 2020 and 2022.[6]

37.     In 2020, the state minimum wage for employers of at least 26 employees was $13.00 per hour. Cal. Labor Code § 1182.12(b)(1)(D).

38.     In 2021, the state minimum wage for employers of at least 26 employees was $14.00 per hour. Cal. Labor Code § 1182.12(b)(1)(E).

39.     In 2022, the state minimum wage for employers of at least 26 employees was $15.00 per hour. Cal. Labor Code § 1182.12(b)(1)(F).

///

///

[6] Defendant notes also that Plaintiff claims other reasons for unpaid off-the-clock work, including but not limited to, Defendants' "unlawful time-rounding policy and practice which rounded down and reduced the actual working hours recorded by Plaintiff" [Exhibit A P. 13 ¶ 73] and "pre-shift work duties, prior to clocking in, including: having to undergo mandatory security checks; complete various paperwork; fuel the company vehicle; and pick up parts." *Id.* at Pp. 13-14 ¶ 74. "Additionally, Plaintiff… [was] required to perform post-shift duties, after clocking out, including having to complete various paperwork" and was "regularly scheduled to be on-call" but was "only paid a flat fee per each pay period, entitling Plaintiff… to minimum…wages, which…were systemically denied." *Id.*

40.     Using the assumptions summarized above concerning Plaintiff's workdays and multiplying by 30 minutes of unpaid wages at the then-applicable minimum wage results in unpaid wages of at least $**5,000.00**:

| UNPAID MINIMUM WAGE | | | |
|---|---|---|---|
| Year | Workdays | Minimum Wage | Amount in Controversy Assuming 1x missed rest period/workday |
| 2020 | 220 | $13.00/hour | 220 * $13.00(0.5) = **$1,430** |
| 2021 | 250 | $14.00/hour | 250 * $14.00(0.5) = **$1,750** |
| 2022 | 250 | $15.00/hour | 250 * $15.00(0.5)  = **$1,875** |
| **Total = $5,055** | | | |

41.     Pursuant to Labor Code § 1194.2, Plaintiff also seeks to recover 'liquidated damages in amounts equal to the amounts of unpaid minimum wages…" [Exhibit A P. 12 ¶ 63; Exhibit A P. 14 ¶¶ 75-79]. Therefore, the amount of unpaid minimum wages is multiplied by two ($5,055 * 2 = $10,110).

42.     Accordingly, Plaintiff's minimum wage claim (exclusive of interests, costs, and attorneys' fees) places in controversy another **$10,110**.

5.     Plaintiff's Unpaid Overtime Claim Places at Least $4,000 in Controversy.

43.     Applying the same logic as above, Plaintiff alleges that he was required to work through meal periods, at least in part because Plaintiff was required to "keep and monitor cellular phones" during the meal period. [Exhibit A Pp. 5-6 ¶ 21]. Accepting Plaintiff's allegations means that Plaintiff was not paid for 30 minutes of off-the-clock work. For purposes of conservatively estimating Plaintiff's unpaid overtime claim, then, Defendant's assume just five minutes of unpaid overtime per day on every work day between 2020 and 2022.[7]

---

[7] Defendant notes also that Plaintiff claims other reasons for unpaid off-the-clock work, including but not limited to, Defendants' "unlawful time-rounding policy and practice which rounded down and reduced the actual working hours recorded by Plaintiff" [Exhibit A P. 13 ¶ 73] and "pre-shift work duties, prior to clocking in, including: having to undergo mandatory security checks; complete various paperwork; fuel the company vehicle; and pick up parts." *Id.* at Pp. 13-14 ¶ 74. "Additionally, Plaintiff… [was] required to perform post-shift duties, after clocking out, including having to complete various paperwork" and was "regularly scheduled to be on-call" but was "only paid a flat fee per each pay period, entitling Plaintiff… to minimum…wages, which…were systemically denied." *Id.*

44.    Using the assumptions summarized above concerning Plaintiff's workdays and multiplying by 5 minutes of unpaid wages at Plaintiff's then-applicable overtime rate results in unpaid overtime wages of at least $**4,000.00**:

| UNPAID OVERTIME WAGES | | | |
|---|---|---|---|
| Year | Workdays | Overtime Wage | Amount in Controversy Assuming 1x missed rest period/workday |
| 2020 | 220 | $67.50/hour[8] | 220 * 67.50(0.08)[9] = **$1,188** |
| 2021 | 250 | $69.75/hour[10] | 250 * $69.75(0.08) = **$1,395** |
| 2022 | 250 | $75.81/hour[11] | 250 * $75.81(0.08) = **$1,516.20** |
| **Total = $4,099.20** | | | |

45.    Accordingly, Plaintiff's unpaid overtime wages claim (exclusive of interests, costs, and attorneys' fees) places in controversy another **$4,099.20**.

6.    Plaintiff's Waiting Time Penalties Claim Places at Least $12,000 in Controversy.

46.    Plaintiff seeks to recover waiting time penalties for "Defendants' failure to timely pay all final wages to him" [Exhibit A P. 15 ¶ 86] in an amount equal to thirty days wages [*Id*. ¶ 87].

47.    Pursuant to Labor Code § 203, an employee's wages shall continue as a penalty until paid for a period up to thirty (30) days from the time they were due.

48.    More than thirty days have passed since Plaintiff's August 2023 separation. As such, Plaintiff seeks to recover waiting time penalties in an amount equal to 30 days' wages.

49.    Assuming that Plaintiff worked 8 hours per day at his final rate of pay ($50.54/hour) generates a 'daily' waiting time penalty amount equal to $404.32 (assuming no overtime).

50.    Multiplying the daily waiting time penalty amount ($404.32) by 30 days results in a maximum waiting time penalty equal to **$12,129.60** ($404.32 * 30 days).

///

---

[8] $45.00/hour * 1.5 = $67.50/hour

[9] 5/60 minutes = 0.083% of one hour.

[10] $46.50 * 1.5 = $69.75/hour

[11] $50.54 * 1.5 = $75.81/hour

7.    **Summary of Claims and Damages**

51.    The below table neatly summarizes the amounts placed in controversy by Plaintiff's Labor Code claims, exclusive of attorneys' fees:

| Claim | Damages | Subtotal |
|-------|---------|----------|
| 1. Unpaid Meal Break Premiums | $34,160 | **$34,160.00** |
| 2. Unpaid Rest Break Premiums | $34,160 | **$68,320.00** |
| 3. Unpaid Minimum Wages | $10,110 | **$78,430.00** |
| 4. Unpaid Overtime Wages | $4,099.20 | **$82,529.20** |
| 5. Waiting Time Penalties | $12,129.60 | **$94,658.80** |

52.    As demonstrated above, Plaintiff's first through fourth causes of action are sufficient to establish that the amount in controversy *exceeds* the jurisdictional threshold for diversity jurisdiction ($75,000) in this Court. The above figures do not account for any potential recovery for Plaintiff's fifth cause of action for allegedly unreimbursed business expenses (Labor Code § 2802) or reasonable attorneys fees (See, *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (confirming that attorneys' fees are properly included in the amount-in-controversy calculation when recoverable by statute). Adding these claims would only push the amount in controversy higher. *See, e.g., Lippold v. Godiva Chocolatier, Inc.*, 2010 WL 1526441, at *4 (N.D. Cal. 2010) (noting that a "typical individual wage and hour case generates [attorneys'] fees in excess of $100,000").

V.    **SATISFACTION OF THE REQUIREMENTS OF 28 U.S.C. § 1446**

53.    In accordance with 28 U.S.C. § 1446(a), Defendant's Notice of Removal is filed in this United States District Court for the Northern District of California because the State Court Action, filed in Alameda County, was filed within the geographic limitations of this district. Therefore, venue is proper pursuant to 28 U.S.C. § 84(a) because the Northern District of California is the "district and division embracing the place where such action is pending." 28 U.S.C. § 114(a).

54.    In accordance with 28 U.S.C. § 1446(a), true and correct copies of the Complaint and all other process, pleadings, and orders served in the State Court Action are attached to this Notice of Removal as **Exhibits A and B**.

55.    In accordance with 28 U.S.C. § 1446(b), Defendant's Notice of Removal is timely filed within 30 days after service of the Summons and Complaint on Defendant.

56.     In accordance with 28 U.S.C. § 1446(d), Defendant will give notice of the original removal of this action to Plaintiff via his counsel and will file a copy of said notice with the Alameda County Superior Court.

**VI.    CONCLUSION**

57.     This Notice of Removal establishes that the United States District Court for the Northern District of California has original jurisdiction over this action. The parties are citizens of different states (California on the one hand, and Ohio on the other), and the amount in controversy exceeds $75,000, exclusive of interest and costs. Accordingly, Defendant respectfully requests that this Court exercise its removal jurisdiction over this action.

58.     In the event that this Court has any questions regarding the propriety of this Notice of Removal, Defendant requests that this Court issue an Order to Show Cause so that it may have an opportunity to more fully brief the Court on the basis for this removal and to address any outstanding questions of the Court.

WHEREFORE, Defendant hereby removes this action to the United States District Court for the Northern District of California.

DATED:  March 15, 2024                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By:  /s/ Paul M. Smith
        Paul M. Smith

Attorneys for Defendant
VERTIV CORPORATION

DEFENDANT'S NOTICE OF REMOVAL